Filed 11/4/14  P. v. Orellana CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075544 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F01056) |
| v. | |
| RAMCES ORELLANA, | |
| Defendant and Appellant. | |

Defendant Ramces Orellana was charged with committing 22 lewd acts on his stepdaughter H. when she was 11 and 12 years old.  A jury found him guilty of 13 of those counts (nine counts of having sex with H., two counts of touching her breasts, and two counts of her touching his penis).  The jury could not reach verdicts on the remaining nine counts of having sex with H., so the People dismissed those nine.  The court sentenced him to 32 years in prison.

On appeal, defendant raises the following six contentions:  (1) trial counsel was ineffective for failing to call an expert witness, so the trial court should have granted

1

defendant's motion for new trial; (2) the People impermissibly split a single offense of continuous sexual abuse of a child into multiple charges of molestation; (3) the trial court erred in admitting evidence of child sexual abuse accommodation syndrome; (4) the trial court violated his constitutional rights by admitting his uncharged sex offenses pursuant to Evidence Code section 1108; (5) the trial court abused its discretion in admitting the uncharged sex offenses under state law; and (6) these cumulative errors require reversal. Disagreeing with these contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Charged Acts*

H. was born in 1997 and was 16 at trial. Defendant molested H. from when she was six years old until she was 13. The charged molestations took place between September 4, 2008 and June 3, 2009, when H. was 11 and 12 years old. H. attended elementary school in Sacramento during that time. She, defendant, and her brother (defendant's son with H.'s mother) were living together in the stand-alone garage of one of defendant's friends, Robert K. They had been living in Robert K.'s house, but defendant said he (defendant) needed more privacy.

There were two beds in the garage: one for H.'s brother and the other for H. and defendant. Defendant had sex with H. and made her touch his penis at least once a week while they lived in Sacramento. Most of the time they had sex, defendant would also touch her breasts. He also made her have anal sex with him "a lot of times." The molestation occurred mostly at night and when her brother was in the house watching television or playing games. Defendant made H. remain in the garage until she agreed to have "sexual interactions."

H. did not tell anybody that defendant was molesting her when she lived in Sacramento because "even though he was doing bad things, [she] was afraid to lose a

2

father again."  H.'s biological father was killed when she was six years old.  Defendant told her that she could not tell anybody about the molestations or "he'll get in trouble."

B

*Uncharged Sex Acts Admitted As Propensity Evidence*

The following evidence was admitted to show defendant's propensity to commit sexual offenses pursuant to Evidence Code section 1108.

1

*Uncharged Sex Acts Against H.*

While the charged acts involving H. occurred when H. was 11and 12 years old in Sacramento, the People also introduced evidence that defendant molested H. when she was younger than 11 and living with him in Texas, New Mexico, and Redwood City, and then later when they moved from Sacramento to Florida.

In Texas, when H. was about seven, defendant had sex with her for the first time. Nobody else was in the house, and defendant "was able to do it little by little."  Also while they lived in Texas, defendant would put "his penis inside [her] bottom" and would "require [her] to use [her] hand on his penis."  H.'s aunt S. suspected defendant was molesting H., but when S. asked H., H. denied it because H. "was really scared at the time."

Defendant and H. (along with H.'s brother) left Texas for New Mexico, and the molestations continued.  Defendant made H. give him "hand jobs," and the two had anal sex frequently.  Defendant also would put his mouth on and fingers in her vagina.

Defendant, H., and her brother later moved to Redwood City, near San Francisco. There, defendant had sex with her and made her rub his penis until he ejaculated.  From Redwood City, they moved to Sacramento where the charged molests occurred.

After living in Sacramento, defendant and H. moved to Florida and began living with H.'s mother again.  The molests continued and included "more sex vaginally, less hand jobs, and less anal sex."

3

In Florida, H. "got . . . tired of everything," and she "finally told her" aunt S. that defendant had been molesting her. S. called the police. Defendant was then charged in Florida with molesting H. H.'s mother was supposed to bring H. to a deposition relating to the case, but the mother did not want to go through with the process. Thus, the Florida case against defendant did not go forward.

2

*Uncharged Sex Act Against B.*

B. was born in 1989 and was a family friend of defendant. In March 1998, B. was living with Robert K., his family, and defendant in Lemoore, California. She was in bed and started to feel sick. She went to defendant's room, which was next door, and told him. He told her to get in his bed. She did, but then he began touching the outside of her vagina. He also took her hand and put it on his testicles. The next morning, she told her grandmother, Robert K.'s wife, and the police. Defendant pled guilty to misdemeanor soliciting lewd acts with a minor.

3

*Uncharged Sex Acts Against I.*

I. was born in 1991 and is another sister of H.'s mother. I. lived with her sister (H.'s mother) and defendant in Texas when I. was younger than 11 years old. Defendant would sometimes sleep with I. in bed. In the beginning, he touched her legs, stomach, and breasts. Defendant progressed to teaching her how to perform oral sex on him, and then he had her orally copulate him, and then he orally copulated her. He told her not to tell anybody. As she got older, he had her engage in anal sex with him and tried vaginal sex as well, but she somehow was able to fend off penetration.

I. was also molested by defendant in Florida when she was 17 and visiting her sister for the summer. Defendant put his penis in her anus, and it bled. I. told her sister S. (who is H.'s aunt S.), and S. insisted that I. tell Florida police.

4

Defendant was charged with molesting I. in Florida.  I. never received documents in Florida ordering her to be present for a deposition related to this charge.  The Florida case against defendant was dismissed.

## C

### *Child Sexual Abuse Accommodation Syndrome*

Dr. Anthony Urquiza testified for the People about child sexual abuse accommodation syndrome.  The syndrome includes the pattern of secrecy, helplessness, entrapment or accommodation, and delayed and/or unconvincing disclosure.  The existence of the syndrome is not to be used to determine whether a child has been abused.  Rather, the syndrome is used to help explain the common behaviors a child who has been sexually abused might exhibit.

## D

### *The Defense*

Defendant testified at trial that the sexual abuse allegations against him were false.  S. had coached H. and I. to say that he had abused them.

## DISCUSSION

## I

### *Defense Counsel Was Not Ineffective, So The Trial Court*
### *Did Not Abuse Its Discretion In Denying Defendant's New Trial Motion*

Defendant contends his trial counsel was ineffective, so the trial court should have granted his motion for new trial that was based on counsel's ineffectiveness.  Defendant claims counsel was "deficient for not consulting with a physician experienced in examining children for sexual abuse, not providing that expert with documents and colposcopic photos[1] for review, and for not calling that expert as a witness to provide

---

[1]  The colposcopic photos documented H.'s "pubertal female ano-genital anatomy."

5

favorable testimony that would undermine the credibility of [H.]." The trial court found to the contrary when it denied defendant's motion for new trial, based on the same claimed deficiencies.

As we will explain, we find no abuse of discretion in the trial court's denial of defendant's motion for new trial. (See *People v. Fosselman* (1983) 33 Cal.3d 572, 582 [ineffective assistance of counsel is a permissible nonstatutory ground on which to bring a new trial motion]; *People v. Thompson* (2010) 49 Cal.4th 79, 140 [" 'a trial court's ruling on a motion for a new trial [is reviewed] under a deferential abuse-of-discretion standard' "].)

Trial counsel investigated the possibility of calling an expert in child sexual abuse to refute H.'s testimony and reasonably decided against it, thus belying any claim that counsel's decision was deficient. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693] [deficient performance is the first prong of an ineffective assistance of counsel claim].) Before trial, counsel consulted with sexual abuse response team nurse Diana Deese. Counsel read Deese "extensive portions of [H.s' medical] report, sometimes several times," summarized the police reports for her, and had two "extensive conversations" with her totaling about one hour. After reviewing these items, Deese's opinion was "inconclusive," meaning "sexual intercourse may or may not have occurred between [defendant] and [H.]" Deese did request to look at the colposcopic photos, but counsel did not have them. Deese concluded that even if she had the photos, her opinion about whether the sexual intercourse had occurred would be the same -- inconclusive.

Moreover, the expert that defendant claimed in his new trial motion should have been called, Dr. James Crawford-Jakubiak, would not have been helpful to the defense. Dr. Crawford-Jakubiak is a licensed physician who is the medical director of the Center for Child Protection at Children's Hospital and Research Center in Oakland. His opinion given in a declaration attached to the new trial motion was that the colposcopic photos

6

showed that H. had "normal pubertal female ano-genital anatomy." In the sexual abuse of "prepubertal girls" that involved "an adult penis [being] introduced into the true anatomic vagina . . . one would expect significant and obvious trauma . . . ." H.'s examination "documented she was a healthy adolescent at the time of her evaluation." "[A] normal exam is consistent with the possibility of past sexual abuse. A normal exam is also consistent with a history of no past sexual abuse." "[T]he determination of whether sexual abuse did or did not occur in this case will be based upon the credibility of the historical information provided by any alleged victims."

As the trial court aptly found, Dr. Crawford-Jakubiak's declaration "did not address a situation where abuse was occurring over a long period of time covering both prepubescent and pubescent ages, which is what occurred in this case . . . ." The doctor did not "say[] [any]thing about how long any trauma would normally take to heal." To that we add Dr. Crawford-Jakubiak's own conclusion that "the determination of whether sexual abuse did or did not occur in this case will be based on the credibility of the historical information provided by any alleged victims." Here, the jury found H. credible by finding defendant guilty of the majority of charges against him. The trial court correctly ruled that none of the things defendant now claims should have been done with regard to calling a medical expert would have made a difference in the trial. Therefore, the trial court did not abuse its discretion in denying the new trial motion.

II

*The People Permissibly Charged Defendant With Multiple*

*Counts Of Molestation Based On H.'s Generic Testimony*

Defendant contends the People violated his Fifth Amendment and Fourteenth Amendment right to due process when it impermissibly split a single offense of continuous sexual abuse of a child (Pen. Code, § 288.5) into multiple charges of molestation. This contention need not detain us long because the California Supreme Court has upheld the constitutionality of this practice.

7

The California Supreme Court has ruled that "even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) The court did caution, however, "prosecutors should exercise discretion in limiting the number of separate counts charged. No valid purpose would be served by charging hundreds or thousands of separate counts of molestation, when even one count may result in a substantial punishment." (*Ibid.*)

Two years after *Jones*, this court noted, "*Jones*, for most practical purposes, renders Penal Code section 288.5 unnecessary. While parenthetically reminding prosecutors to exercise discretion in limiting the number of separate counts charged, the Supreme Court has sanctioned convictions of multiple counts of violating Penal Code section 288 based solely on generic testimony. Prosecutors need not rely on the continuous course of conduct exception crafted into [Penal Code] section 288.5 when '[t]estimony pitched at such a low level of specificity' suffices to meet the relaxed quantum of proof of multiple violations of s[Penal Code] section 288 articulated in *Jones*." (*People v. Higgins* (1992) 9 Cal.App.4th 294, 301.)

Here, all the acts charged were between September 4, 2008 and June 3, 2009. H. attended elementary school in Sacramento during that time. H. testified defendant had sex with her and made her touch his penis at least once a week while they lived in Sacramento. He touched her breasts "most of the time but not all of the time" when defendant had sex with H. Although H.'s testimony regarding the sexual abuse was generic, it "outline[d] a series of *specific*, albeit undifferentiated, incidents, *each* of which amount[d] to a separate offense, and *each* of which could support a separate criminal sanction." (*People v. Jones*, *supra*, 51 Cal.3d at p. 314.) We follow *Jones*, as it is binding on this court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

8

# III

*The Trial Court Did Not Err In Admitting Testimony About*

*Child Sexual Abuse Accommodation Syndrome*

The trial court admitted Dr. Urquiza's testimony about child sexual abuse accommodation syndrome, over defendant's objection that it was unreliable. Defendant makes the same argument here.

Contrary to defendant's argument, expert testimony regarding child sexual abuse accommodation syndrome is admissible for limited purposes in child sexual abuse trials. "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident--e.g., a delay in reporting--is inconsistent with his or her testimony claiming molestation." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301.) " 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. . . . The great majority of courts approve such expert rebuttal testimony.' " (*Id*. at p. 1301.) But, the People do not have to wait for the defense to raise the credibility issue and may present the evidence initially. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1745.)

Here, H. did not tell anybody that defendant was molesting her when she lived in Sacramento because " [she] was afraid to lose a father again" and defendant told her that she could not tell anybody or "he'll get in trouble." Dr. Urquiza made clear that the existence of child sexual abuse accommodation syndrome was not to be used to determine whether a child has been abused, but rather to help explain the common behaviors a child who has been sexually abused might exhibit, such as delayed disclosure. Given these facts, the trial court did not err in admitting the evidence of child sexual abuse accommodation syndrome.

9

IV

*The California Supreme Court Has Upheld The Constitutionality Of*

*Evidence Code Section 1108, Regarding The Admissibility Of Uncharged Sex Offenses*

Under Evidence Code section 1108, a court in a criminal sex offense trial may admit evidence of other uncharged sex offenses committed by defendant if the evidence is not unduly prejudicial under Evidence Code section 352.  (Evid. Code, § 1108, subd. (a).)

Here, the court admitted evidence of uncharged sexual offenses involving H., B., and I. under Evidence Code sections 1108 and 352.

Defendant contends Penal Code section 1108 is unconstitutional.  As he recognizes, however, the California Supreme Court has rejected this argument in *People v. Falsetta* (1999) 21 Cal.4th 903, 915, and we are bound by this ruling (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455).

V

*The Trial Court Was Within Its Discretion To Admit*

*The Uncharged Sex Offenses Under Evidence Code Section 352*

Notwithstanding the constitutionality of Evidence Code section 1108, defendant contends the trial court abused its discretion in admitting the uncharged sex offenses under Evidence Code sections 1101 and 352.  We limit our discussion to defendant's Evidence Code section 352 claim, because the court admitted this evidence under Evidence Code section 1108, and Evidence Code section 1108 is an exception to Evidence Code section 1101, subdivision (a)'s general prohibition against propensity evidence.  (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.)

Evidence Code section 352 allows the court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  This discretion will not be

disturbed except if it resulted in a " 'manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Defendant's argument pertaining to Evidence Code section 352 is that the trial court abused its discretion because the other acts were remote, all but one did not result in convictions, and they created " 'mini-trial[s]' " within the trial involving the charged offenses.

As to remoteness, this issue comes into play when the record establishes a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways. (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [this observation made in the context of striking a strike prior].) Here, the record establishes the opposite. Defendant continued to sexually abuse girls from 1998 (the touching on B.) through 2010 (the sexual assaults on H.). The uncharged acts were not aberrant episodes. Rather, they established a pattern of unabated molestation of girls to whom defendant had access. The trial court correctly determined that this factor did not weigh in favor of exclusion.

As to the issue regarding convictions, while it is true the only uncharged act that resulted in a conviction was the 1998 touching of B., the record establishes that the jury was not inclined to convict defendant here simply because of the uncharged acts. The jury actually failed to reach a verdict on nine of the 22 counts, belying defendant's suggestion that the jury punished him in this case because he was not punished for the uncharged acts on H. and I.

Finally, as to defendant's argument that the trial court abused its discretion in admitting the other sexual acts evidence because they created " 'mini-trial[s],' " we find no abuse there either. The presentation of the other acts evidence was not unduly time consuming. H.'s testimony on the other acts was approximately 14 pages. I.'s testimony was approximately 40 pages, and B.'s testimony was approximately 20 pages. (See *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139 [35 pages of testimony on prior acts

11

was not prejudicial].)   In all, there were approximately 74 pages of other acts testimony, compared with approximately 562 total pages of trial testimony, not a significant consumption of time.

In sum, the factors defendants points to do not demonstrate the court abused its discretion under Evidence Code section 352 in admitting the other sex acts evidence.

## VI

### *There Were No Errors To Accumulate*

Defendant contends the cumulative effect of the errors he has alleged requires reversal.  As our above discussion illustrates, we have found no errors to accumulate.

### DISPOSITION

The judgment is affirmed.

 

 

     ROBIE     , Acting P. J.

We concur:

     MURRAY     , J.

     DUARTE     , J.

12